# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ADAM MOLLING,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT G. MCARTHUR and RGM DESIGN, INC.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (ECF NO. 7)**<br><br>Case No. 1:17-cv-00189<br><br>Magistrate Judge Evelyn J. Furse |

In December 2017, Plaintiff Adam Molling filed the Complaint in this matter. (Compl., ECF No. 2.) Mr. Molling's Complaint asserted claims against Defendants Robert G. McArthur and RGM Design, Inc. (collectively, "RGM") for (1) failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), (2) retaliation in violation of the FLSA, and (3) breach of the covenant of good faith and fair dealing. (Compl., ¶¶ 23–39, ECF No. 2.) On February 27, 2018, RGM moved to dismiss Mr. Molling's Complaint in its entirety. (Mot. to Dismiss ("Mot."), ECF No. 7.) After receipt of the Motion to Dismiss, on March 13, 2018, Mr. Molling filed an Amended Complaint omitting his first cause of action for failure to pay overtime in violation of the FLSA but continuing to assert claims for retaliation under the FLSA and breach of the covenant of good faith and fair dealing. (See Am. Compl., ECF No. 11.) Mr. Molling opposed the Motion to Dismiss, arguing that he pled his remaining two causes of action sufficiently. (Pl.'s Resp. to Mot. to Dismiss ("Opp'n"), ECF No. 12.) RGM filed its Reply on March 16, 2018. (Reply in Supp. of Mot. to Dismiss ("Reply"), ECF No. 14.)

The Court[1] held a hearing on RGM's Motion to Dismiss on May 17, 2018.  (ECF No. 25.)  The parties agreed the Court should consider the Motion to Dismiss as fully briefed and addressing the Amended Complaint because the arguments as to the remaining causes of action had not changed.

Given that Mr. Molling filed an Amended Complaint omitting his cause of action for failure to pay overtime in violation of the FLSA, the Court DENIES AS MOOT RGM's Motion to the extent it seeks dismissal of that claim.  Further, as explained in detail below, the Court finds Mr. Molling sufficiently pleads an FLSA retaliation claim and therefore DENIES RGM's Motion as to that claim.  However, the Court agrees with RGM that Mr. Molling fails to state a claim for breach of the covenant of good faith and fair dealing and therefore GRANTS RGM's Motion as to that claim.

## **FACTUAL BACKGROUND**

Mr. Molling's Amended Complaint asserts claims against RGM Design, Inc. and Robert G. McArthur, the principal owner of RGM Design, Inc.  (Am. Compl. 1, ECF No. 11.)  Mr. Molling alleges he began working for RGM as a Financial Controller and LDS Project Manager in July 2013.  (Id., ¶¶ 8, 11.)  At the start of his employment, he worked part-time on an hourly basis, and by the end of his employment in September 2017, he worked full time on an hourly basis.  (Id., ¶¶ 9–10, 22.)  Mr. Molling asserts that beginning September 1, 2017 he engaged in protected activities under the FLSA, that he suffered an adverse employment action when RGM terminated him on September 11, 2017, and that a causal connection exists between his termination and

---

[1] The parties consented to proceed before the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (ECF No. 19.)

the protected activities, in part because of the short time period between the protected activities and his termination. (Id., ¶¶ 25–27.)

Providing background to the events of September 2017, Mr. Molling alleges that in October 2013, a company employee told him that RGM did not pay overtime wages and that Mr. Molling then brought the issue to Mr. McArthur's attention and advised him to follow the FLSA and pay overtime. (Am. Compl., ¶ 13, ECF No. 11.) Mr. Molling asserts RGM elected to pay a straight time rate for hours worked over forty hours per week instead of an overtime rate. (Id.) He then asserts that in April 2014, he and then-office manager, Aubrey Andrus, met with RGM to encourage payment of overtime wages. (Id., ¶ 14.) He claims that RGM began to pay overtime wages at that point but never paid back wages. (Id.)

Mr. Molling alleges that a few years later, on September 1, 2017, RGM moved to a new location and during the move asked him to stay and continue working overtime. (Am. Compl., ¶ 16, ECF No. 11.) Concerned that RGM would not properly pay him overtime wages, Mr. Molling agreed to stay and work only if RGM would pay him overtime. (Id., ¶¶ 16, 25(a).) Mr. Molling claims he stayed and worked because RGM assured him it would pay him overtime wages. (Id., ¶ 16.)

On the same day, Mr. McArthur and then-office manager Maurine Jaramillo called Mr. Molling to a meeting where they informed him of a new policy that required hourly employees who worked more than forty hours a week to "bank hours" and use them as paid time off at a future date. (Id., ¶ 17.) Mr. Molling asserts that during the meeting, he told them he thought the practice violated the FLSA and that he opposed

the practice. (Id., ¶¶ 17, 25(b).) Mr. McArthur responded that he disagreed and told Mr. Molling to direct further questions to the company accountant. (Id., ¶ 17.)

Mr. Molling claims he then spoke to the company accountant, David Tucker, who confirmed that banking hours violated the FLSA and told Mr. Molling he would talk to Mr. McArthur about the issue. (Id., ¶¶ 18, 25(c).) Mr. Molling also spoke to Ms. Jaramillo again, who told him she felt RGM would terminate her if she opposed the practice of banking hours. (Id., ¶¶ 19, 25(d).) Mr. Molling claims he followed-up with Mr. Tucker again on September 7, 2018 to see if RGM intended to change the banking hours policy. (Am. Compl., ¶¶ 20, 25(e), ECF No. 11.) Mr. Tucker indicated that he had not yet spoken to Mr. McArthur. (Id., ¶ 20.)

Subsequently, on September 8, 2017, Mr. Molling alleges he spoke to Mr. McArthur about the overtime policy again and informed him he spoke to Mr. Tucker who agreed the policy of banking overtime hours violated the FLSA. (Id., ¶¶ 21, 25(f).) He claims that in response, Mr. McArthur began lecturing Mr. Molling "about checking up on him." (Id., ¶ 21.)

On the following Monday, September 11, 2017, Mr. Molling alleges Mr. McArthur asked to speak to him alone outside the building and, at that time, terminated his employment. (Am. Compl., ¶ 22, ECF No. 11.) Mr. Molling recorded the conversation. (Id.) During that conversation, Mr. Molling and Mr. McArthur discussed the events of the prior week. (Id.) Among other things Mr. Molling indicated that he said he could stay to help with the move but that RGM would have to pay overtime and that Mr. McArthur got upset. (Id.) Mr. McArthur replied "Right, because you weren't even

4

willing to try when you knew we were so tight on budget.  You knew we were so tight . . . ."  (Id.)  Mr. Molling reiterated that the overtime policy violated the law.  (Id.)

Mr. Molling asserts claims against RGM for retaliation in violation of the FLSA and for breach of the covenant of good faith and fair dealing.  (Am. Compl., ¶¶ 23–32, ECF No. 11.)  Mr. Molling seeks unpaid wages, back wages, front wages, compensatory damages, and attorney's fees and costs.  (Id. at 9.)

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  Hogan v. Winder, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In reviewing a motion to dismiss, the court accepts as true the well-pled factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.  Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013).  "[A] plaintiff must offer specific factual allegations to support each claim."  Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing Twombly, 550 U.S. at 570).  A complaint survives only if it "'states a plausible claim for relief,'" though courts recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  Id. at 1214–15 (quoting Iqbal, 556 U.S. at 679).

## DISCUSSION

### I. FLSA RETALIATION CLAIM

RGM moves to dismiss Mr. Molling's FLSA retaliation claim, arguing that the Amended Complaint fails to allege facts sufficient to state a claim. (Mot. at 7–9, ECF No. 7; Reply at 2–5, ECF No. 14.) Specifically, RGM argues that Mr. Molling fails to allege facts that show Mr. Molling engaged in a protected activity under the FLSA. (Id.) As addressed below, the Court finds Mr. Molling's retaliation claim sufficiently pled to survive a motion to dismiss.

Among other things, the FLSA makes "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]" unlawful. 29 U.S.C. § 215(a)(3). This antiretaliation provision "protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal." Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984); see also McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996) (stating "§ 215(a)(3) . . . protects employees who articulate a good faith, though unproven, belief that the employer is violating their rights under the FLSA.") Further, this provision "applies to the unofficial assertion of rights through complaints at work," Love, 738 F.2d at 387, and protects both oral and written complaints to an employer. Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 4 (2011).

Courts analyze FLSA retaliation claims "under the familiar three-pronged McDonnell Douglas burden-shifting framework." Pacheco v. Whiting Farms, Inc., 365 F.3d 1199, 1206 (10th Cir. 2004). "Under this standard, a plaintiff must first establish a

prima facie case of retaliation." Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997). To do so, the plaintiff must demonstrate "(1) []he engaged in protected activity under FLSA, (2) []he suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action." Pacheco, 365 F.3d at 1206. However, at the pleading stage, a plaintiff does not have to establish a prima facie case in his complaint. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002) ("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). Nonetheless, "the elements of each alleged cause of action help to determine whether [a p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

### A. Protected Activity Under the FLSA

RGM's Motion focuses on the first prong of a prima facie case of retaliation, disputing that Mr. Molling engaged in a protected activity under the FLSA. RGM argues that the allegations in Mr. Molling's Amended Complaint "[a]t best," show "he merely reported 'concern' as to whether or not he would be paid overtime." (Reply at 3–4, ECF No. 14; Mot. at 8–9, ECF No. 7.) Relying on the Supreme Court's decision in Kasten and cases from other circuits, including a district court case from the Eighth Circuit, RGM claims that this expressed "concern" falls short of invoking the FLSA's antiretaliation provision. (Id.) RGM's argument both misconstrues the Amended Complaint's allegations and contravenes Tenth Circuit authority.

First, the Amended Complaint does more than plead that Mr. Molling expressed "concern" about whether RGM would pay him overtime. Mr. Molling alleges that on

7

September 1, 2017, he insisted on overtime pay before agreeing to stay and only agreed to work overtime because RGM assured him it would pay him time and a half. Further, Mr. Molling asserts that shortly thereafter, Mr. McArthur, RGM's owner and Ms. Jaramillo, RGM's officer manager, called him into a meeting to inform him of a new overtime policy in which hourly employees must "bank" overtime hours and use them later as paid time off. Mr. Molling alleges he replied that the practice violated the FLSA and that he opposed it. Mr. Molling further asserts he subsequently complained to Mr. Tucker, RGM's accountant, about the policy and that Mr. Tucker confirmed that the hours banking policy violated the FLSA. Mr. Molling also alleges he complained again to Ms. Jaramillo and Mr. McArthur and told Mr. McArthur that Mr. Tucker agreed that the policy violated the FLSA. Finally, Mr. Molling recorded the conversation when Mr. McArthur fired him, during which Mr. Molling indicated again that the policy violated the FLSA. Thus, the Amended Complaint alleges not just that Mr. Molling expressed concerns about getting paid overtime; it asserts he insisted on being paid overtime on September 1, 2017, and complained about RGM's banking overtime hours policy to RGM's owner and others at the company on multiple occasions.

Second, the Tenth Circuit has held that the FLSA's antiretaliation provision "applies to the unofficial assertion of rights through complaints at work." Love, 738 F.2d at 387. RGM cites to a district court case from the Eight Circuit, Bartis v. John Bommarito Oldsmobile-Cadillac, Inc., 626 F. Supp. 2d 994 (E.D. Mo. 2009), in arguing that "workplace complaints" do not trigger the FLSA's antiretaliation provision. (Mot. at 7–8, ECF No. 7.) However, this case does not bind this Court, and in fact, acknowledges that the Tenth Circuit and other circuits have held the opposite. See

8

Bartis, 626 F. Supp. 2d at 998 ("The First, Third, Sixth, Seventh, Ninth, Tenth, and Eleventh circuits have all held that informal workplace complaints are protected from retaliation.")  RGM's cites to Fourth Circuit precedent similarly do not apply.  (See Mot. 8, ECF No. 7.)

The Amended Complaint alleges that Mr. Molling insisted on overtime pay before agreeing to stay late on September 1, 2017.  That complaint constitutes a protected activity.  See Pacheco, 365 F.3d at 1206 ("An employee's request for overtime wages is a protected activity in the form of an unofficial assertion of FLSA rights.").  Further, the Amended Complaint alleges Mr. Molling complained to RGM's owner, office manager, and accountant about the banking hours policy and even told Mr. McArthur that the policy violated the FLSA and that he opposed it.  The FLSA's antiretaliation provision protects these types of complaints, as well.  See Love, 738 F.2d at 387.  Moreover, as the Supreme Court held in Kasten, the FLSA's antiretaliation provision protects oral complaints—the complaints at issue in this case.  563 U.S. at 4 ("We must decide whether the statutory term 'filed any complaint' includes oral as well as written complaints within its scope.  We conclude that it does.").

Third, despite RGM's argument to the contrary, (Mot. at 7–8, ECF No. 7; Reply at 2–3, ECF No. 14), Mr. Molling made sufficiently formal and clear requests for overtime pay and complaints regarding the banking hours policy to trigger protection under the FLSA's antiretaliation provision.  In Kasten, the Supreme Court stated that the FLSA antiretaliation provision "contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns,"

9

and that "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 563 U.S. at 14. Mr. Molling asserts he insisted on overtime pay before agreeing to work extra hours on September 1, 2017. Further, he alleges he complained directly to the company's owner, Mr. McArthur, about the banking overtime hours policy on multiple occasions and specifically told Mr. McArthur that the policy violated the FLSA and that he opposed it. Mr. Molling also alleges that he complained to the company's office manager and accountant about the policy and that the accountant agreed the policy violated the FLSA. These alleged interactions with RGM amount to more than Mr. Molling "just letting off steam." Katsen, 563 U.S. at 14. Mr. Molling made sufficiently clear and detailed demands and complaints that provided, or should have provided, notice to RGM that Mr. Molling was asserting rights under the FLSA.

RGM also appears to argue that the FLSA's antiretaliation provision did not protect Mr. Molling because RGM never denied him compensation for hours worked, and the banking hours policy never went into effect and never impacted him. (Mot. at 8–9, ECF No. 7; Reply at 3, 4 n.1, ECF No. 14.) As an initial matter, Mr. Molling's Amended Complaint, which is all the Court reviews on a motion to dismiss, does not make any allegations concerning whether RGM denied him compensation for overtime hours worked or whether the banking hours policy ultimately went into effect. However, even if RGM did not deny Mr. Molling overtime pay and the banking hours policy never went into effect, those facts have no consequence.

The FLSA's antiretaliation provision "protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal." Love, 738 F.2d at 387. Further, as the Tenth Circuit held in McKenzie, "it is the assertion of statutory rights (i.e., the advocacy of rights) by taking some action adverse to the company—whether via formal complaint, providing testimony in an FLSA proceeding, complaining to superiors about inadequate pay, or otherwise—that is the hallmark of protected activity under § 215(a)(3)." 94 F.3d at 1486 (emphasis in original); see also Love, 738 F.2d at 387 (finding an employee's "good faith assertion of [his or] her statutory rights" protected by the FLSA).

Mr. Molling alleges that on September 1, 2017 he insisted on overtime pay before working extra hours. Taking this allegation as true, as the Court must at this stage, this demand constitutes a good faith assertion of his statutory rights to overtime pay under the FLSA, even if RGM ultimately paid him those wages. Further, Mr. Molling alleges that Mr. McArthur and Ms. Jaramillo told him that RGM intended to implement the banking overtime hours policy and that he then complained to them and to RGM's accountant about the policy. Again, taking these allegations as true, Mr. Molling's complaint about the banking hours policy triggered the FLSA's antiretaliation provision because he believed in good faith that RGM intended to implement the policy and that the policy violated the FLSA.

In sum, Mr. Molling's Amended Complaint sufficiently alleges he engaged in protected activity under the FLSA.

### B. Adverse Employment Action

The Amended Complaint also sufficiently alleges the second prong of a prima facie retaliation case—that Mr. Molling suffered an adverse employment action contemporaneous with or subsequent to the protected activity. Mr. Molling alleges he engaged in a number of protected activities beginning on September 1, 2017 and that RGM terminated his employment on September 11, 2017. RGM does not take issue with this prong, and the Court finds the Amended Complaint's allegations sufficient to satisfy this prong at the pleading stage. See Pacheco, 365 F.3d at 1206 ("An adverse employment action is a detrimental change in the terms or conditions of employment, such as termination.")

### C. Causal Connection

The Court also finds Mr. Molling's Amended Complaint satisfies the third prong, which requires a causal connection between the protected activity and the termination. Mr. Molling alleges that, among other things, he complained to RGM's owner, Mr. McArthur, about the banking hours policy in early September and again on September 8, 2017, and that the following Monday on September 11, 2017, Mr. McArthur terminated his employment. Mr. Molling also alleges that on September 1, 2017 Mr. McArthur expressed dissatisfaction with his request for overtime pay and his complaints concerning the banking overtime policy. As with the second prong, RGM does not argue that Mr. Molling failed to plead this element adequately, and the Court finds the allegations sufficient at this stage to state a claim. See Pacheco, 365 F.3d at 1206 ("A causal connection can be demonstrated circumstantially through evidence that justifies an inference of retaliatory motive, such as a 'very close' temporal proximity between the

protected activity and adverse employment action."); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation.")

***

Because the Amended Complaint adequately pleads an FLSA retaliation claim, the Court DENIES RGM's motion to dismiss this claim.

## II. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

RGM also moves to dismiss Mr. Molling's claim for breach of the covenant of good faith and fair dealing, arguing that RGM employed Mr. Molling at-will and that he fails to allege the existence of any type of employment contract, a prerequisite for asserting a claim for breach of the covenant of good faith and fair dealing. (Mot. at 9–10, ECF No. 7; Reply at 6–7, ECF No. 14.) Mr. Molling counters that "at-will employment, in and of itself, is a contractual agreement" and therefore includes a duty of good faith and fair dealing. (Opp'n at 5–6, ECF No. 12.) As addressed below, the Court agrees with RGM that Mr. Molling fails to plead facts to support a claim for breach of the covenant of good and fair dealing.

"An implied covenant of good faith and fair dealing inheres in every contract." Eggett v. Wasatch Energy Corp., 2004 UT 28, ¶ 14, 94 P.3d 193. "Such a covenant cannot be construed, however, to establish new, independent rights or duties not agreed upon by the parties." Brehany v. Nordstrom, Inc., 812 P.2d 49, 55 (Utah 1991). Accordingly, the covenant of good faith "cannot be construed to change an indefinite-term, at-will employment contract into a contract that requires an employer to have good

13

cause to justify a discharge.'" Id.; see also Heslop v. Bank of Utah, 839 P.2d 828, 840 (Utah 1992) (stating that Utah has "definitively refused to recognize an implied-in-law covenant of good faith that would replace the traditional at-will rule in employment cases"); Defeudis v. Wolfenden, No. 2:13-CV-00429, 2014 WL 2559443, at *3 (D. Utah June 6, 2014) (unpublished) ("'Utah does not recognize an action for breach of an implied duty of good faith where . . . the employment is terminable at will.'" (quoting Davis v. Utah Power & Light Co., No. 87–C–0659, 1988 WL 217350, at *4 (D. Utah Nov. 23, 1988) (unpublished)).

Mr. Molling admits in his Opposition that he had an at-will employment relationship with RGM and that he "is not attempting to state a claim in this case that any implied agreement existed that would change the nature of his otherwise at-will employment." (Opp'n at 6, ECF No. 12.) Given this admission, Mr. Molling's claim for breach of the implied covenant of good faith and fair dealing plainly fails.

As addressed above, Utah courts will not construe the implied duty of good faith to change at-will employment relationships. See, e.g., Brehany, 812 P.2d at 55. Had Mr. Molling alleged facts in his Amended Complaint from which the Court could infer that an implied agreement existed as a result of something like an oral promise or employee manual that modified the at-will relationship, then he could have potentially stated a claim for breach of the covenant of good faith and fair dealing. See Berube v. Fashion Ctr., Ltd., 771 P.2d 1033, 1044 (Utah 1989) (stating that the at-will "presumption can be overcome by an affirmative showing by the plaintiff that the parties expressly or impliedly intended a specified term or agreed to terminate the relationship for cause alone. Such evidence may be found in employment manuals, oral

agreements, and all circumstances of the relationship which demonstrate the intent to terminate only for cause or to continue employment for a specified period.")  However, Mr. Molling does not plead any facts to show that an express or implied agreement existed—and concedes he did not do so—which is fatal to his claim.  See Branham v. Delta Airlines, 184 F. Supp. 3d 1299, 1316 (D. Utah 2016), aff'd, 678 F. App'x 702 (10th Cir. 2017) (unpublished) ("Because Plaintiff has failed to establish the existence of an implied contract, she cannot establish a violation of the covenant of good faith and fair dealing.")

In short, because RGM had the right to terminate Mr. Molling at-will, he cannot assert a claim for breach of the covenant of good faith and fair dealing stemming from his termination.  See Defeudis, 2014 WL 2559443, at *3 (stating that the defendant employer "had the right to terminate [the plaintiff] at-will.  Thus, the exercise of that right could not as a matter of law breach the covenant of good faith and fair dealing.  For this reason alone, Plaintiff's claim must fail.")  Accordingly, the Court GRANTS RGM's motion to dismiss this claim.

### III. ATTORNEY'S FEES

RGM asks the Court to award it attorney's fees for bringing its Motion given that Mr. Molling dropped his claim for failure to pay overtime in violation of the FLSA after it filed the Motion.  (Reply at 8–9, ECF No. 14.)  RGM's Reply does not identify any basis for such an award.  (See id.)  When questioned, counsel explained at the hearing that RGM believes the Court should make the award pursuant to Fed. R. Civ. P. 11 or its inherent powers.

The Court declines to award RGM fees incurred in bringing its Motion. Courts in the United States generally require each side to pay its own attorney's fees unless a statute or contract provides otherwise. See An-son Corp. v. Holland-Am. Ins. Co., 767 F.2d 700, 703 (10th Cir. 1985) ("The general American rule is that, absent a statute or an enforceable contract, litigants pay their own attorneys fees."). The Court sees no reason to depart from this rule in this case. RGM correctly notes that Mr. Molling withdrew his claim for failure to pay overtime in violation of the FSLA, but this fact does not show Mr. Molling brought the claim in bad faith. To the contrary, it shows RGM's Motion had the intended effect with respect to at least one of Mr. Molling's claims for relief.

Moreover, the Court did not grant RGM's Motion in its entirety. As outlined above, Mr. Molling's Amended Complaint states a claim for retaliation under the FSLA. The Court also notes that in moving to dismiss this claim, RGM misconstrued the allegations in the Amended Complaint and ignored binding Tenth Circuit authority, which the Court finds troubling. Finally, the Court could not impose sanctions under Rule 11 at RGM's request in any event because RGM has not followed the procedures required for seeking sanctions under this Rule. See Fed. R. Civ. P. 11(c)(2).

## CONCLUSION

For the reasons stated above, the Court (1) DENIES AS MOOT RGM's Motion to the extent it seeks dismissal of the claim for failure to pay overtime wages in violation of the FLSA, (2) DENIES RGM's Motion to the extent it seeks dismissal of the FLSA retaliation claim, (3) GRANTS RGM's Motion to the extent it seeks dismissal of the

16

claim for breach of the covenant of good faith and fair dealing, and (4) denies RGM's request for fees.

DATED this 17th day of September, 2018.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge